## BELL v. STATE. (No. 9081.)

(Court of Criminal Appeals of Texas. April 15, 1925.)

**1. Larceny ⟹41—Burden on state to sustain allegation as to special ownership of goods in certain person during commission of theft.**

Burden is on state to sustain allegation as to special ownership of goods in railroad agent during commission of theft by showing theft was committed while car was in his possession.

**2. Larceny ⟹60—Evidence *held* not to establish alleged special ownership of goods in certain person at time of theft.**

Evidence *held* not to show theft from railroad car occurred after car came into possession of railroad agent in whom ownership was alleged.

Appeal from Criminal District Court, Dallas County; Grover C. Adams, Judge.

Marvin Bell was convicted of having stolen certain property from the possession of a certain person, and he appeals. Reversed and remanded for new trial.

E. L. Roark and J. Frank Wilson, both of Dallas, for appellant.

Tom Garrard, State's Atty., and Grover C. Morris, Asst. State's Atty., both of Austin, for the State.

HAWKINS, J. The indictment charges defendant with having stolen 15 cases of crisco from the possession of R. G. McElree, the alleged owner.

The evidence shows that on November 16, 1922, Proctor & Gamble Company loaded into a car at their plant in Dallas a shipment of crisco for Carroll, Buff, Robertson & Gates, at Graham, Tex. The superintendent of Proctor & Gamble Company testified that in making shipments of this kind each case of crisco had the name of the consignee stenciled on it. He testified that later at the city hall he saw some of the crisco marked to the Graham firm. The superintendent did not actually see the crisco loaded into the car, but Mr. Moss, the warehouse and loading foreman for Proctor & Gamble Company, testified that he superintended the loading of this shipment and checked it to see that it was correct. He further testified that the cases of crisco were stenciled and consigned to Carroll, Buff, Robertson & Gates, at Graham, Tex. Mr. Moss refers to the car into which the shipment was loaded, but nowhere in his testimony do we find the number of the car, nor the name of it, given. He further testified that, after cars were loaded, they were sealed under his supervision, but, if this particular car was sealed by him or under his direction, the seals are not described nor their numbers stated. Mr. McElree, the party alleged to have been in possession of the crisco when it was stolen, was the agent of the Santa Fé and Frisco railroads. He is shown to have charge of cars shipped from Proctor & Gamble Company after they reached his terminal. The terminals under his supervision were the Santa Fé, Rock Island, and Frisco tracks in Dallas. The Houston & Texas Central tracks were not under McElree's supervision. McElree testified that the car in which the crisco was loaded was an Missouri, Kansas, & Texas car, No. 86782; that it was a Proctor & Gamble distributing car consigned to Carroll, Buff, Robertson & Gates, at Graham, Tex. McElree never saw the car, and only knew from the records of his office that the car was ever in his yards. While cars were at the Proctor & Gamble plant they were not under his supervision or control. Mr. Roby testified that he was an employee of the "Dallas Car Interchange Bureau"; that when a car moved from one road to another it was the duty of some one to take the name and number of the car, the numbers of the seals on it, where it was from, and where consigned to; that it was the duty of the witness to copy this report in the records of his department, and that his records so made showed the car to be an Missouri, Kansas & Texas car, No. 86792, the seal on the right side to have been No. 658497 and the left seal to have been No. 658494. The original entry reflected by Roby's record appears to have been made by a Mr. Elwood, who was not working for the railroad at the time of trial, and was not used as a witness. It is not shown where the car was when Elwood made the data, nor at what time he made it. O'Shea testified that he was yard master for the Houston & Texas Central Railroad; that on the morning of November 17, 1922, he saw Missouri, Kansas & Texas car No. 86792 being moved by a switch engine, and discovered the door on the east side open; that he had his seal clerk to reseal it, using what he calls a "Z. M." seal. It is not stated in O'Shea's evidence on what tracks the car was moving at the time he discovered the open door, whether on the Rock Island, Santa Fé, Frisco, or on the Houston & Texas Central, but the inference would be that it was on the Houston & Texas Central tracks, as he had control of them and assumed the duty of resealing the car. From his inspection of the car about 15 cases of crisco appeared to be missing. When the car reached Graham the shipment checked 15 cases of crisco short. The car at that point showed the seal on the east door to be Y-10064, and the one on the west side to be Y-10066.

About 8 o'clock on the night of November 16, 1922, the defendant and one Jess Smith appeared at the home of Dennis Perkins. Defendant stated that his truck was broken down, and requested permission to leave some crisco there until morning. Defendant and Smith brought 13 or 14 cases of crisco into the house and stacked it in the back room. The next morning it was hauled by witness Adkins from Perkins' house at the request of defendant. It was traced, some to Tony Labarbar's place and some to S. Leocodi's, where it was recovered by the officers and taken to the city hall.

Some interesting questions are presented which arose upon the introduction of evidence by the state over objection. As the appeal must be disposed of upon another issue, we pretermit discussion of these questions.

[1, 2] It is urged that the evidence does not support the allegation in the indictment that the crisco was stolen from the possession of McElree. It is plain that the theft occurred between the hours the car was loaded at Proctor & Gamble Company's plant and the time when defendant and Jess Smith appeared at the house of Perkins with the crisco. But the serious question is, Where was the car when it happened? In other words, in whose possession as special owner. There is no testimony in the record (if so we have overlooked it) showing when this car moved from the loading tracks at Proctor & Gamble Company's plant to the terminal tracks which are shown to have been under the supervision and control of McElree, nor when it moved from his tracks to the Houston & Texas Central tracks, which were under the control of O'Shea. If the theft occurred before the car reached the tracks under McElree's supervision, or after it left his tracks, the car was not in his possession nor under his control, and the allegation of ownership in him could not be sustained. The record shows that at 8 o'clock on the morning of November 17, this car was discovered by O'Shea at a point between the yard office and the Santa Fé crossing, being moved by a switch engine. Whether it went onto the Houston & Texas Central tracks before 8 o'clock on the preceding night is not shown. The record before us, as we understand it, leaves the proof in such shape that the theft may have occurred while the car was still in the possession of Proctor & Gamble Company, or while it was in the possession of McElree as agent of the terminal tracks under his control, or while in the possession of O'Shea on the Houston & Texas Central tracks under his control. The state might have avoided the question by placing other counts in the indictment to cover the various phases of the testimony. But, having elected to charge McElree only as the special owner, the burden was on the state to prove its case as alleged; that is, that the theft occurred while the car and its contents was in the possession of McElree. Having failed to do this, we must reverse the judgment and remand the cause, for a new trial.